UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

AUDREY VASILAS

                Plaintiff,

v.                                          Case No.  5:05-cv-473-Oc-GRJ

LINDA S. McMAHON[1], Acting Commissioner of
Social Security,

                Defendant.
_____/

## ORDER

       Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits. (Doc. 1.)  The Commissioner has answered (Doc. 3) and both parties have filed briefs outlining their respective positions.  (Docs. 8 & 12.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I.  PROCEDURAL HISTORY

       On September 19, 2002, Plaintiff filed an application for disability insurance benefits claiming a disability onset date of November 13, 2001. (R.59-61.)  Plaintiff's application was denied initially (R. 30-32), and upon reconsideration. (R. 27-29.)  Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").

---

[1] On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The ALJ conducted Plaintiff's administrative hearing on February 15, 2005 (R. 519-556) and issued a decision unfavorable to Plaintiff on July 21, 2005. (R.10-20.)  The Appeals Council denied Plaintiff's request for review on September 21, 2005 (R. 6-8.)  On November 18, 2005, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] See 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6]   The law

defines disability as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment that can be expected to result in

death, or has lasted or can be expected to last for a continuous period of not less than

twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her

previous work, or any other substantial gainful activity which exists in the national

economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a

claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a

claimant does not have any impairment or combination of impairments which

significantly limit her physical or mental ability to do basic work activities, then she does

not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments

meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

---

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] Walker at 1003.

4

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

## III. SUMMARY OF THE EVIDENCE

Plaintiff was born on October 26, 1954 and was fifty (50) years old at the time of the hearing. (R. 523.) Plaintiff completed high school (R. 524) and has past relevant work history as an obstetrics technician and medical assistant. (R. 73, 85-86.) Plaintiff contends that she has been unable to work since November 13, 2001, due to problems with her head, neck, back, arms, left shoulder and hands. (R. 72.)

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that the Plaintiff retained the residual functional capacity (RFC) to perform a significant range of light work. In making this finding the ALJ determined that Plaintiff suffers from carpal tunnel syndrome, cervical degenerative disc disease and degenerative disc disease.  (R. 14.) The ALJ determined that Plaintiff was incapable of performing her past relevant work but that she possessed the RFC to perform a significant number of jobs which existed in the national economy. (R. 18.)

---

[20] Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

Plaintiff suffered from a shoulder injury in October 1997. (R. 142.) While the results of diagnostic imaging performed on the injured shoulder were within normal limits, Plaintiff was diagnosed with shoulder impingement syndrome by Dr. James Duke in January 1998. (R. 132, 142-143.) Plaintiff underwent treatment for the shoulder pain, which was unsuccessful. (R. 138.) Plaintiff then underwent arthroscopy, labral debridement and arthroscopic decompression of the shoulder in February 1998. (R. 134.)  Although the record of the treatment suggests that Plaintiff realized some improvement of her pain, Plaintiff continued to complain of significant pain in February 2001. (R. 127.) Additional medical records disclose that Plaintiff was treated for acute tendonitis of the right wrist in August 1996 (R. 223) and surgical records evidence that Plaintiff underwent surgery to correct a herniated nucleus puposus of the cervical spine in September 2000. (R. 139-140.)

In November 2001, Dr. Jospeph Aguiar diagnosed Plaintiff with bilateral carpal tunnel syndrome and precluded Plaintiff from the performance of repetitive activities for more than two hours at a time. (R. 165-166.)  In addition, Plaintiff continued to use pain and anti-inflammatory medications and the record discloses that Plaintiff continued to engage in a regimen of physical therapy until she was discharged into a program of home exercises in September 2002.  Upon discharge, Plaintiff was able to bend thirty-eight degrees and extend forty-six degrees. Plaintiff's grip strength was recorded as twenty-eight pounds on the right and nineteen pounds on the left. (R. 180-225.)

From April 2000 through February 2003, Plaintiff consulted with Dr. Antonio DiScalfani regarding Plaintiff's condition.  On April 12, 2000, Dr. DiScalfani opined that Plaintiff had reached maximum medical improvement with respect to her back injuries at

that time.  Dr. DiScalfani stated that Plaintiff had sustained a seven percent impairment to her body as a whole.  (R. 239-240.) On February 10, 2003, Dr. DiScalfani opined that Plaintiff was unable to lift trays or return to her past relevant work as a surgical technician. (R. 226.) Plaintiff underwent an injection of Lidocaine into the lumbar region of her spine after being diagnosed with degenerative changes of the spinal region at the Advanced Imaging Center of Clermont in late 2002. (R. 245-247.)

In April 2003, Plaintiff consulted with Dr. Edward Demmi, who recorded that Plaintiff exhibited positive impingement to the left shoulder at ninety degrees. Although the movement in Plaintiff's lumbar spine was normal, Dr. Demmi noted that Plaintiff exhibited decreased motion in her cervical spine as well as decreased bilateral grip strength. (R. 275-278.)

In May 2003, Plaintiff was given a prescription for release of the right median and ulnar nerves after being diagnosed with right carpal tunnel syndrome and right ulnar nerve entrapment at the elbow by Dr. Vidya Jain.  (R. 310-311.) Dr. Jain released Plaintiff to work on October 15, 2004 but restricted Plaintiff to the performance of light duty. (R. 322.)

Plaintiff was compliant with physical therapy though August 2004; however, Plaintiff continued to experience substantial pain in both her left shoulder and her wrist as late as August 26, 2004. (R. 416.) In March 2004, Plaintiff's physical therapy concluded and her treating therapist stated that she had lost five degrees of active dorsi flexio and ten degrees of active palmer flexion. (R. 416.) Although the Plaintiff was continuing to experience significant pain in her arms and wrists, it was noted that she was rehabilitated and that she was independently pursuing normal activities of daily

living at the time. The ALJ noted that this information is congruent to the testimony elicited from the Plaintiff at the hearing in this case. (R. 16.)

Plaintiff continued to seek care and management to control her impairments with Rehabilitation Medicine Associates through July 2004.  On February 10, 2005, Dr. Jain stated that Plaintiff can occasionally carry twenty-five pounds below her waist and frequently carry and lift five pounds. (R. 514.) However, Dr. Oregon Hunter found that the Plaintiff can lift and carry a maximum of ten pounds on an occasional basis and that Plaintiff is limited to standing for four hours per eight hour time frame and sitting for two hours per eight hour time frame.  Dr. Hunter also stated that Plaintiff is precluded from climbing ladders and further limited Plaintiff to occasional twisting, stooping, crouching and climbing stairs. (R. 516-518.)

The ALJ found that Plaintiff's allegations that she is unable to work are not supported by the objective medical signs and laboratory findings and as such, are not fully credible. (R. 17.) The ALJ found that Plaintiff retains the residual functional capacity to perform a wide range of light work, but that it is limited by a preclusion from climbing ladders, ropes and scaffolds and an inability to crouch, crawl and push or pull with her right upper extremity on more than an occasional basis. The ALJ also found that Plaintiff is precluded from repetitive gross manipulations with her right upper extremity and that Plaintiff must avoid all vibration with her right upper extremity. Further, the ALJ stated that Plaintiff must avoid hazards, machinery and heights and is precluded from twisting her right upper extremity. (R. 17.) Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may include a good deal of walking or standing, or may involve sitting most of

the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If someone can do light work, they are also deemed to be able to do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

The ALJ determined, that due to these limitations, Plaintiff is unable to return to any of her past relevant work activities. (R. 17.) As such, the burden of proof shifted to the Social Security Administration to show that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform, consistent with her residual functional capacity, age, education and work experience.

The ALJ used the Medical-Vocational Guidelines as a framework for his decision and found that Plaintiff is capable of performing a significant range of light work as defined in 20 CFR § 404.1567. (R. 18.) Additionally, in determining whether there were significant number of jobs in the national economy for an individual with Plaintiff's RFC the ALJ obtained testimony from a vocational expert ("VE"). The VE testified that assuming the hypothetical individual's specific work restrictions, she is capable of making a vocational adjustment to other work. (R. 18.) The VE testified that given all of these factors, Plaintiff could work as a light, unskilled office clerk (77,500 jobs in the national economy), a light, unskilled sales associate (225,000 jobs in the national economy), or as a light, unskilled security guard (53,000 jobs in the national economy). (R. 550-551.)

Based on the testimony of the VE, the ALJ concluded that Plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the economy and thus the ALJ concluded that the Plaintiff was not disabled.

## IV.  DISCUSSION

Plaintiff's primary argument is that the ALJ improperly analyzed Plaintiff's subjective complaints of pain by failing to make a proper credibility determination. Plaintiff argues that there was sufficient medical evidence that supported Plaintiff's subjective complaints of pain.  For the following reasons, the Court disagrees and concludes that the ALJ made a proper credibility determination of Plaintiff's subjective complaints of pain.

In evaluating disability, the ALJ must consider all of a claimant's impairments, including her subjective symptoms, such as pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[23]  The Eleventh Circuit has set forth a three-part test for determining when a disability may be established based on subjective complaints of pain.[24]  The "pain standard" requires that the plaintiff first produce medical or other evidence of an underlying medical condition.  Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be

---

[23] 20 C.F.R. § 404.1528.

[24] Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

reasonably expected to give rise to the alleged pain.[25] "Pain alone can be disabling, even when its existence is unsupported by objective evidence."[26] However, a claimant's subjective complaints of pain do not conclusively establish a disability unless accompanied by medical evidence.[27]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[28] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[29]

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[30] If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision,

---

[25] Id.

[26] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[27] 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms *shall not alone be conclusive evidence of disability* as defined in this section; there *must* be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability") (emphasis added).

[28] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[29] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[30] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

"the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[31]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[32] assessment to Plaintiff's subjective complaints by noting the Plaintiff's complaints of "significant pain". (R. 15, 16.) Although the ALJ did not cite the exact language of the standard, the ALJ's discussion and findings evidence that the standard was applied and followed by the ALJ in considering Plaintiff's subjective complaints of pain.

The ALJ stated that he "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p." (R. 15.) This regulation and Social Security Ruling 96-7p contain the same language regarding subjective testimony that the Eleventh Circuit interpreted when initially establishing the pain standard[33] and thus evidence that the ALJ recognized the appropriate standard for analyzing the extent to which Plaintiff's subjective complaints of pain should be given in determining whether the Plaintiff was disabled.

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing an underlying medical condition, carpal tunnel syndrome, cervical degenerative

---

[31] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[32] Marbury, 957 F.2d at 839.

[33] See Wilson, 284 F.3d at 1226.

disc disease and degenerative disc disease (R. 19), that could be expected to give rise

to the complaints of pain.  Once Plaintiff met this initial burden, however, the ALJ found

Plaintiff's complaints regarding her level of pain and inability to work were not totally

credible, stating that Plaintiff's allegations were "simply not supported by the objective

medical signs and laboratory findings of the record..."[34]

Although Plaintiff argues that the ALJ rejected Plaintiff's credibility "with no

evidentiary basis for doing so," a review of the ALJ's decision does not support this

view.  Rather, the ALJ's decision discloses that the ALJ conducted a thorough

examination of Plaintiff's medical history, including Plaintiff's complaints of pain. The

ALJ noted that Plaintiff complained of "significant pain in February 2001,"[35] that Plaintiff

used "pain and anti-inflammatory medications,"[36] and that Plaintiff "continued to

experience substantial pain in both her left shoulder and her wrist as late as August 26,

2004."[37]

The ALJ also discussed the details of the history of Plaintiff's work restrictions,

including Dr. Jain's release of Plaintiff back to work on October 5, 2004 with a restriction

to the performance of "light duty."[38]  The ALJ further appropriately noted that as of

March, 2004, while the Plaintiff was known to experience significant pain in her arms

and wrists, Plaintiff's therapist stated that "she was rehabilitated and that she was

---

[34] R. 17

[35] R. 15

[36] Id.

[37] R. 16

[38] Id.

independently pursuing normal activities of daily living at that time."[39] The ALJ found

such finding "is congruent to the testimony elicited from the claimant during the hearing

of this case."[40]

In reaching his determination regarding Plaintiff's work limitations, the ALJ

discussed the most recent evidence of medical treatment in the case. This evidence,

the ALJ noted, "indicates that Plaintiff continued to seek supportive care and

management of medications prescribed to control her diverse impairments through the

Rehabilitative Medicine Associates through July 2004."[41]

Moreover, in determining that Plaintiff's subjective complaints were not credible

to the extent that they would preclude all substantial gainful employment, the ALJ

specifically relied upon and discussed a medical source statement by Dr. Jain. The

medical source statement from Dr. Jain evidenced that as of February 10, 2005, Plaintiff

could "occasionally carry twenty-five pounds below her waist and frequently carry and

lift five pounds," a finding which is inconsistent with Plaintiff's allegations of disabling

pain.[42] Although the ALJ recognized that Dr. Hunter had opined that Plaintiff's work

limitations were more restrictive from those assigned by Dr. Jain, the ALJ gave greater

weight to Dr. Jain's opinion, in view of the fact that Dr. Jain had been treating Plaintiff

since 2003. It is not the function of the reviewing court to re-weigh the evidence.

Moreover, where, as here, an ALJ has made a clearly articulated credibility finding with

---

[39] Id.

[40] Id.

[41] Id.

[42] R. 514-515.

substantial supporting evidence, a reviewing court should not disturb the ALJ's finding with regard to subjective complaints, including pain.[43]

Accordingly, for these reasons, the Court concludes that the medical evidence discussed by the ALJ supports the ALJ's decision regarding his assessment of Plaintiff's subjective complaints of pain and the ALJ in his decision articulated adequate reasons for discounting Plaintiff's subjective complaints of pain, including the inconsistencies between the medical evidence and Plaintiff's alleged limitations.

## V.  **CONCLUSION**

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED.** The Clerk is directed to enter final judgment and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on February 13, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
        All Counsel

---

[43] Hale, 831 F.2d 1007, 1012.